UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LAURIE HUDSPETH | CIVIL ACTION

VERSUS

UNITED STATES OF AMERICA, ET AL. | NO. 25-474-BAJ-EWD

## RULING AND ORDER

Before the Court is the Government's **Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Doc. 10).** The Motion is opposed. (Doc. 13). The Government filed a Reply Brief. (Doc. 22). For the reasons stated herein, the Motion is **GRANTED.**

## I. BACKGROUND

This case arises out of alleged sexual misconduct towards Plaintiff, a caregiver and qualified adopter of untrained wild horses, by Defendant Demitris Sanders, an employee for the Bureau of Land Management ("BLM"). (Doc. 1 ¶¶ 5, 6, 8). Plaintiff alleges the following facts.

The BLM is a federal agency within the U.S. Department of the Interior (DOI). 43 U.S.C. §§ 1451, 1457. When Congress passed the Wild Free-Roaming Horse and Burro Act of 1971 (the "Act"), the federal legislature expressly recognized that "wild free-roaming horses and burros are living symbols of the historic and pioneer spirit of the West" that "enrich the lives of the American people" and remain "integral" to this Nation and its "public lands." 16 U.S.C. § 1331; *see also* 43 C.F.R. § 4700.0-5(a).

To facilitate the private maintenance and care of excess "wild free-roaming horses and burros," and to prevent their destruction, Congress requires the Secretary of the Interior to "humanely capture[]" these animals so that "qualified individuals" such as Plaintiff may adopt them. 16 U.S.C. § 1332(b)(2).

Pursuant to federal regulations, the BLM administers the Wild Horse and Burro Adoption Program, which Plaintiff participates in. 43 C.F.R. § 4700 *et seq.*; *see also Adoption Program*, U.S. DEP'T OF INTERIOR: BUREAU OF LAND MGMT., https://www.blm.gov/programs/wild-horse-and-burro/adoptions-and-sales/adoption-program (last visited Sep. 26, 2026).[1] At the time of the incident giving rise to this lawsuit, Plaintiff also participated in the BLM's Adoption Incentive Program, which provides a stipend to qualified adopters of untrained wild horses and burros. (Doc. 1 ¶¶ 24, 25, 38).

Plaintiff alleges that Sanders assaulted her at a BLM-sponsored wild horse adoption event at the Lamar Dixon Expo Center in Ascension Parish, Louisiana, on November 4, 2023. (*Id.* at ¶¶ 5, 6, 14, 59–60). Plaintiff alleges that Sanders "groped and grabbed" Plaintiff's breast. (*Id.* at ¶¶ 6, 9). Plaintiff also contends that Sanders, an "Authorized Officer" and "Southeastern States Wild Horse and Burro Specialist" for the BLM, was acting in the course and scope of employment at the time of the incident. (*Id.* at ¶¶ 6, 59–60). Plaintiff avers that she was deeply traumatized by the alleged assault. (*Id.* at ¶ 7).

---

[1] Federal district courts "may take judicial notice of governmental websites," including when ruling on Rule 12(b)(1) challenges to Federal Tort Claims Act (FTCA) claims. *In re Katrina Canal Breaches Consol. Litig.*, 533 F. Supp. 3d 615, 631–32 (E.D. La. 2008) (citing *Hyder v. Quarterman*, No. C-07-291, 2007 WL 4300446, at *3 (S.D. Tex. Oct. 10, 2007)).

Sanders and Plaintiff first interacted on August 12, 2023, when Sanders responded to Plaintiff's communication to the BLM regarding a mustang she hoped to adopt.[2] (*Id.* at ¶ 47). Plaintiff avers that her initial phone calls and text messages with Sanders "were professional, until the end of the interaction." (*Id.* at ¶ 49). The following day, Sanders texted Plaintiff, "Anytime anything for you" with a heart emoji, "Hope to see you in Cullman" for a subsequent mustang adoption event, and "'WTD' . . . 'WYD.'" (*Id.* at ¶¶ 49–52).[3] Plaintiff did not reply to Sanders' final text message. (*Id.* at ¶ 52).

Three months later, Plaintiff attended the November 4 event. (*Id.* at ¶¶ 59–60). After helping Plaintiff affix a horse trailer containing a mustang that she had just adopted to her truck, and seemingly out of sight of the other BLM employees, Sanders, "unexpectedly and without any prompting . . . moved closer to" Plaintiff's "personhood, extended his right arm, and then shoved his hand and grabbed" Plaintiff's "right side of her breast near her armpit." (*Id.* at ¶¶ 68–70). Plaintiff initially "panicked and froze" before pushing Sanders away. (*Id.* at ¶ 71). Plaintiff never consented to Sanders' unwanted sexual contact. (*Id.*).

---

[2] A "mustang" is a type of wild horse. *See Placing Wild Horses and Burros East of the Mississippi, Supporting Healthy Herds and Public Lands in the West*, U.S. DEP'T OF INTERIOR: BUREAU OF LAND MGMT. (May 22, 2026), https://www.blm.gov/blog/2026-05-22/placing-wild-horses-and-burros-east-mississippi-supporting-healthy-herds-and-public.

[3] "WTD" is a common abbreviation in text messages that means "What To Do?" Meanwhile, "WYD" is another common abbreviation in text messages that means "What [Are] You Doing?" *WYD* (abbreviation), MERRIAM-WEBSTER, INC., https://www.merriam-webster.com/dictionary/WYD (last visited Sep. 28, 2026).

Plaintiff avers that she departed with her new horse and drove on the interstate in "shock" for about an hour before she called Sanders and left a voicemail stating: "Don't you ever put your hands on me, or I will have your job." (*Id.* at ¶ 74). Sanders allegedly called Plaintiff soon thereafter and stated that he thought Plaintiff "had a great spirit." (*Id.* at ¶ 75). Sanders neither apologized for nor denied allegedly grabbing Plaintiff's breast. (*Id.*)

On December 12, 2023, Plaintiff informed Travis Tolbert, another BLM employee, about the alleged assault and her desire to no longer engage with Sanders. (*Id.* at ¶ 80). Plaintiff avers that BLM policies, including "DOI, Personnel Bulletin 18-0, Prevention and Elimination of Harassing Conduct (Public)," prohibit harassment and sexual battery. (*Id.* at ¶ 85). Plaintiff also asserts that these policies set forth that "[e]mployees who know of or witness possible harassing conduct directed at others *are expected to* report the matter" to the BLM's Office of Professional Responsibility and Office of the Inspector General. (*Id.*).

In its Motion to Dismiss, the Government asserts that on December 13, 2023, the BLM's "Office of Professional Responsibility (OPR) initiated an investigation based on a referral from the BLM website that allows members of the public to 'Report Misconduct.'" (Doc. 10-1 at 4). The Government contends that, "[b]ased on Plaintiff's report of misconduct, and with Plaintiff's consent, OPR contacted the Ascension Parish Sheriff's Office, and a joint investigation was conducted into Plaintiff's allegations." (*Id.*)

According to the Government, following "multiple witness interviews, including of Sanders and the Plaintiff, with no security footage available, and with Plaintiff's and Sanders' conflicting accounts, the sheriff's deputy did not have evidence to move forward and closed its case." (*Id.*) The BLM's "OPR also closed its investigation based on those findings." (*Id.*) Plaintiff neither alleges this information in her Complaint nor contests the Government's representations in her Opposition brief. (Doc. 1; Doc. 13).

On November 5, 2024, Plaintiff submitted a "Notification of Incident and Claim for Damages," a Standard Form 95, which is a "Claim for Damage, Injury, or Death,"[4] and supplemental documents to the Office of the General Counsel at the DOI and the OPR at the BLM. (Doc. 1 at ¶ 12). Plaintiff avers in one portion of her Complaint that the BLM denied her claim but also appears to suggest in another portion of her Complaint that the BLM did not respond. (*Id.* at ¶¶ 12, 15).

## II. PROCEDURAL HISTORY

On June 2, 2025, Plaintiff filed suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671. Plaintiff also seeks to invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367 by seeking redress under Louisiana state law for

[4] A Standard Form 95 "is used to present claims against the United States under the Federal Tort Claims Act (FTCA) for property damage, personal injury, or death allegedly caused by a federal employee's negligence or wrongful act or omission occurring within the scope of the employee's federal employment. These claims must be presented to the Federal agency whose employee conduct gave rise to the injury." *Documents and Forms*, U.S. Dep't of Just., Civ. Div., https://www.justice.gov/civil/documents-and-forms-0 (last visited Sep. 28, 2026); *see also Hamburg v. U.S. Postal Serv.*, No. H–10–2186, 2010 WL 4226461, at *1 n.1 (S.D. Tex. Oct. 20, 2010) (Rosenthal, J.) ("Standard Form 95 (or 'SF–95') is a form developed by the Department of Justice to facilitate the presentment of claims based on the Federal Tort Claims Act").

the "torts of assault, battery, sexual assault, and emotional distress." (*Id.*) Plaintiff named the following Defendants in the Complaint:

(1) The United States of America;

(2) Tracy Stone-Manning, Director of the BLM;

(3) Bob Swithers, District Manager of the BLM's Southeastern States Office; and

(4) Demitris Sanders, a BLM "Authorized Officer" and Southeastern States Wild Horse and Burro Specialist.

(*Id.* ¶ 9).

In the Complaint, Plaintiff asserts eight causes of action under the FTCA and Louisiana state law. She asserts the following three causes of action under the FTCA:

(1) Negligence against the United States (Count One);

(2) Negligent Infliction of Emotional Distress against the United States (Count Two); and

(3) Negligent Hiring, Retention, Training, and Supervision against the United States (Count Three).[5]

[5] (Doc. 1, ¶¶ 118–90). Plaintiff also briefly mentions at ¶ 7, but does not set forth in an organized fashion, that she "brings this action under the Federal Tort Claims Act ('FTCA'), 28 U.S.C. § 2671, *et seq.*, for the torts of assault/battery, intentional infliction of emotional distress, and negligence; and under the laws of the State of Louisiana including torts of assault, battery, sexual assault, and intentional infliction of emotional distress, *et seq.*, based upon the supplemental jurisdiction of this Court pursuant 28 U.S.C. to § 1367" (sic). (*Id.* at ¶ 7). This paragraph does not align with the counts that Plaintiff sets forth later in her Complaint.

Meanwhile, Plaintiff asserts the following five causes of action under Louisiana law:

(1) Sexual Battery against Defendant Sanders (Count Four);

(2) Battery against Defendant Sanders (Count Five);

(3) Intentional Infliction of Emotional Distress against Defendant Sanders (Count Six);

(4) Vicarious liability against the United States, Stone-Manning, and Swithers (Count Seven);

(5) *Respondeat Superior* against the United States, Stone-Manning, and Swithers (Count Eight).

Plaintiff is "seeking damages to redress the injuries she has suffered as a result of such actions," including damages for mental anguish and emotional distress, punitive damages, attorneys' fees, court costs, and more. (*Id.* ¶¶ 7, 225, 228).

In response to the Complaint, the Government filed the instant Motion to Dismiss. (Doc. 10). Plaintiff opposes the Motion, asking the Court to defer ruling on substitution of parties or dismissal "pending limited, targeted discovery" on a few issues. (Doc. 13 at 18). For the following reasons, the Motion will be **GRANTED.**

## III. LEGAL STANDARD

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citations omitted). "The burden of proof for a Rule 12(b)(1)

motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (*citing McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d. at 161 (*citing Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d. at 161 (*citing Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam)). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d. at 161 (*citing Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).

"When ruling on a motion to dismiss for lack of subject-matter jurisdiction," under Rule 12(b)(1) of the Federal Rules of Civil Procedure, "a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *Burnett Specialists v. Cowen*, 140 F.4th 686, 693 (5th Cir. 2025); *see also Reece v. Hamm*, No. 19-669-JWD-EWD, 2020 WL 5026862, at *5 (M.D. La. Aug. 25, 2020). "The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff." *Burnett Specialists*, 140 F.4th at 693 (citing *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994)).

The United States Court of Appeals for the Fifth Circuit has held that "a jurisdictional attack" under Rule 12(b)(1) that is "intertwined with the merits of an FTCA claim should be treated like any other intertwined act, thereby making resolution of the jurisdictional issue on a 12(b)(1) motion improper." *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004). When "issues of fact are central both to subject matter jurisdiction and the claim on the merits," the Fifth Circuit has "held that the trial court must assume jurisdiction and proceed to the merits." *Id.* "In circumstances where 'the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case' under either Rule 12(b)(6) or Rule 56." *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)).

The Fifth Circuit has since questioned *Montez* by "express[ing] doubt about whether a court can ever 'assume jurisdiction and proceed to the merits,'" but has confirmed that *Montez* remains binding law in civil actions brought under the FTCA. *Houston Refining, L.P. v. United Steel, Paper and Forestry, Rubber, Mfg.*, 765 F.3d 396, 407 n.20 (5th Cir. 2014) (citing *Montez*, 392 F.3d at 150). For *Montez* to be applied, "jurisdictional issues" must "hinge on issues of fact." *Martinez v. Baumann*, 796 F. Supp. 3d 337, 352 (W.D. Tex. 2025) (Pulliam, J.).

## IV. DISCUSSION

As noted, Plaintiff brings two categories of claims: (1) FTCA claims; and (2) claims under Louisiana law. The court will address each in turn, beginning with the FTCA claims.

### A. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's FTCA Claims.

The FTCA "enables district courts to exercise jurisdiction over claims against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *Id.*; *see also* 28 U.S.C. § 1346(b). "The FTCA allows a plaintiff to pursue tort actions against the federal government, and it holds the government liable as if it were a defendant in state court, subject to strict limitations." *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 252 (5th Cir. 2006) (en banc). "Codified at 28 U.S.C. § 2680, these exceptions deprive courts of subject matter jurisdiction and cannot be waived." *Id.*

Here, Plaintiff asserts three FTCA claims against the Government: (1) negligence (Count One); (2) negligent infliction of emotional distress (Count Two); and (3) negligent hiring, retention, training, and supervision (Count Three).[6] (Doc. 1 at ¶¶ 118–90). The Government asks the Court to dismiss each of Plaintiff's FTCA claims against it for lack of subject matter jurisdiction. (Doc. 10 at 1).

---

[6] Although Plaintiff does not allege a discrete cause of action for assault and battery under the FTCA in her Complaint, Plaintiff references such a claim elsewhere in her Complaint. (*Compare* Doc. 1 at p. 24–43 *with* Doc. 1 ¶ 7).

In response, Plaintiff asks the Court to defer ruling on substitution of parties or dismissal "pending limited, targeted discovery" on the following topics:

(1) whether Sanders' conduct furthered any legitimate governmental purpose;

(2) whether BLM supervisors complied with or violated the Department of the Interior's "mandatory policies;" and

(3) whether the acts or omissions alleged were "personal, prurient, or unauthorized."

(Doc. 13 at 18). Plaintiff contends that "these factual issues cannot be resolved on the pleadings alone" absent "limited, targeted discovery on the scope-of-employment issue." *Id.* For the following reasons, the Court finds that it lacks subject matter jurisdiction over Plaintiff's FTCA claims, and that permitting discovery would not persuade otherwise.[7]

**i. Sovereign Immunity Under the FTCA.**

The United States "may be sued only to the extent that it waives its sovereign immunity." *FRS Trenchcore, Inc. v. Fed. Aviation Admin.*, No. 23-01571-BAJ-EWD,

[7] "District Courts have broad discretion to permit jurisdictional discovery." *Reece v. Hamm*, No. 19-669-JWD-EWD, 2020 WL 5026862, at *7 (M.D. La. Aug. 25, 2020). "As the party opposing dismissal and requesting discovery, the plaintiff[] bear[s] the burden of demonstrating the necessity of discovery." *Id.* (citing *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013)). However, "[P]laintiff is not entitled to discovery 'if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion.'" *Id.* (citing *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009)). Here, the record shows that the requested discovery will not produce the facts needed to withstand a Rule 12(b)(1) motion. When an alleged assault or battery is not committed within the course and scope of a federal employee's employment, the federal court "lacks jurisdiction over [the] case." *Hamburg*, 2010 WL 4226461, at *1. Discovery would not change the Court's ruling in this matter.

2024 WL 4241618, at *2 (M.D. La. Sep. 19, 2024). In the FTCA, the Government "has waived its sovereign immunity in certain specified classes of tort claims." *Id.*

Accordingly, the Court must determine whether the Government has waived its sovereign immunity with respect to Plaintiff's claims here. Plaintiff "bears the burden of showing 'Congress's unequivocal waiver of sovereign immunity.'" *Lewis v. Napolitano*, No. 11-2137, 2012 WL 274415, at *2 (E.D. La. Jan. 31, 2012) (Vance, J.) (citing *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010)). For the following reasons, the Court finds that Plaintiff cannot meet her burden here.

**ii. The FTCA's Intentional Tort Exception.**

In its Motion, the Government argues that the Court lacks subject matter jurisdiction over Plaintiff's claims under the "intentional tort exception" to the FTCA's waiver of sovereign immunity. *See Dickson v. United States*, 11 F.4th 308, 313 (5th Cir. 2021) (An important "exception to the FTCA's waiver of sovereign immunity is the 'intentional tort exception.'"). The intentional tort exception, described in Section 2680(h) of the FTCA, indicates that the Government does not waive its sovereign immunity over the following claims:

> Any claim arising out of ***assault, battery***, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h) (emphasis added); *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (describing same). Here, each of Plaintiff's FTCA claims against the Government arises out of Sanders' alleged assault and battery, and therefore, are barred by the intentional tort exception.

**a) Plaintiff's FTCA Negligence Claim (Count One) is Barred by the Intentional Tort Exception.**

The Government asserts that the intentional tort exception bars Plaintiff's claims, including: "intentional torts [] against [] Sanders, including[] sexual battery, battery, and intentional infliction of emotional distress under Louisiana Law," and "several bases of liability arising out of the alleged intentional torts against the United States and its officials, including negligence; negligent infliction of emotional distress; negligent hiring, retention, training, supervision and investigation; and employer-liability theories." (Doc. 10-1 at 6). The Government urges that "the FTCA's waiver of sovereign immunity exempts intentional torts and claims that *sound* in negligence but arise out of the alleged intentional tort." (Doc. 10 at 2; Doc. 10-1 at 5).

When evaluating whether a claim based on a particular form of conduct is "barred by one of the enumerated exceptions in § 2680(h)," the intentional tort exception, federal courts examine the "substantive law of the state where the alleged act or omission occurred." *Hamburg v. U.S. Postal Serv.*, No. H–10–2186, 2010 WL 4226461, at *2 (S.D. Tex. Oct. 20, 2010) (Rosenthal, J.).

In Louisiana, a "battery" is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Landry*

*v. Bellanger*, 851 So. 2d 943, 949 (La. 2003). Here, Sanders' alleged actions of "grop[ing] and grab[bing]" Plaintiff's breast constitute a battery under Louisiana law because they involve a "harmful or offensive contact" of Plaintiff that was intended to bring about such contact. (Doc. 1 at ¶¶ 6, 9).[8] Because Plaintiff's claim arises out of the intentional tort of battery, Section 2680(h) bars Plaintiff from bringing FTCA claims arising out of this conduct against the United States.

A "plaintiff cannot circumvent the purpose of [S]ection 2680(h) by 'framing [her] complaint in terms of [the Government's] negligent failure to prevent the excepted harm.'" *Truman*, 26 F.3d at 594–95 (citing *McNeily*, 6 F.3d at 347)). Section 2680(h) of the FTCA "does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." *Hamburg*, 2010 WL 4226461, at *2 (emphasis in original).

Here, Plaintiff contends that the United States negligently failed to prevent Sanders' sexual battery by failing to implement a series of preventative measures. (Doc. 1 at ¶¶ 118–46.) In other words, Plaintiff has tried to style a claim arising out of Defendant Sanders' sexual battery as a negligence action. "Plaintiff's claims of negligence" are thus "predicated upon conduct that constitutes battery, a tort

---

[8] Plaintiff relies on Louisiana Civil Code article 2315 and Louisiana's Protection for Victims of Sexual Assault Act to establish civil liability for sexual battery against Sanders under state law. (Doc. 1 at ¶¶ 191–202). As the Government points out, this statute defines "sexual assault" as "any nonconsensual sexual contact including but not limited to any act provided in [Louisiana Revised Statute §] 15:541(24) or obscenity ([Louisiana Revised Statute §] 14:106)." *Michot v. Edward D. Jones & Co., L.P.*, No. 18-0921-JTT-MLH, 2018 WL 11507827, at *5 (W.D. La. Sep. 20, 2018), *report and recommendation adopted*, 18-0921-JTT-MLH, 2018 WL 11507826 (W.D. La. Oct. 10, 2018) (quoting La. R.S. § 46:2184) (citing Doc. 10-1 at 10). Consequently, the statutes that Plaintiff cites as her basis for her state-law claims against Defendant Sanders are not to the contrary.

enumerated in § 2680(h)," and are therefore barred by the FTCA's intentional tort exception. *Lewis*, 2012 WL 274415, at *3.

**b) Plaintiff's FTCA Negligent Hiring, Retention, Training, and Supervision and NIED Claims are also Barred (Counts Two and Three).**

To state a claim for negligent infliction of emotional distress or negligent hiring, retention, training, and supervision against the Government under the FTCA, Plaintiff must show that the "negligence arises out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States." *Leleux v. United States*, 178 F.3d 750, 757 (5th Cir. 1999); *see also Hamburg*, 2010 WL 4226461, at *3. This independent duty is a question of Louisiana state law. *See Hamburg*, 2010 WL 4226461, at *3.

Here, Plaintiff has not alleged that the Government owed her any duty under Louisiana state law that is unrelated to Sanders' employment relationship with the United States. Instead, Plaintiff alleges that the Government owes her a duty "in its screening, hiring, training, supervising, evaluating, and retaining of" Sanders and other individuals. (Doc. 1 at ¶ 184). Plaintiff also asserts that the Government had a duty to "protect the health and safety of adopters" participating in the Adoption Incentive Program. (*Id.* at ¶ 179). In addition, Plaintiff argues that the BLM "breached several independent duties imposed by federal law and policy, including" purported "duties to: (1) ensure that employees with a history of fraternization or prior misconduct conform to appropriate professional behavior; (2) provide adequate custody, control, and supervision at public adoption events; and (3) protect members

of the public–such as Plaintiff–from foreseeable harm during agency-sponsored programs." (Doc. 13 at 12). All of these alleged duties arise out of the Government's employment relationship with Sanders, and Plaintiff does not argue that the Government owes her a duty under Louisiana state law that does not arise out of its employment relationship with Sanders. Accordingly, Plaintiff's claims of negligent infliction of emotional distress and negligent hiring, retention, training, and supervision against the Government are similarly barred by the FTCA's intentional tort exception.[9]

#### c) Plaintiff's "Law Enforcement Officer" Argument Does Not Persuade Otherwise.

Plaintiff attempts to circumvent the intentional tort exception by contending that Sanders is an "investigative or law enforcement officer" acting "within the course and scope of his employment with the Defendant United States at all relevant times." (Doc. 1 at ¶ 110). Plaintiff asserts that Sanders, on account of his role as an "Authorized Officer" for the BLM, "may arrest without warrant" any individual that he "witnesses" committing a violation of the Act. (*Id.* at ¶¶ 107–08); *see also* 43 CFR § 4700.0-5 (providing the full popular name of the Wild Free-Roaming Horse and Burro Act).

---

[9] To the extent Plaintiff asserts a claim of intentional infliction of emotional distress ("IIED") against the Government under the FTCA, this claim is similarly barred under the intentional tort exception. *See Lewis*, 2012 WL 274415, at *3 (finding that a "plaintiff's claim of intentional infliction of emotional distress is excludable under Section 2680(h)" when "the conduct underlying [a] plaintiff's claim of intentional infliction of emotional distress arises out of conduct that constitutes a tort enumerated in Section 2680(h).").

Whether Sanders is an investigative or law enforcement officer is relevant because Congress has "carved out an exception to [28 U.S.C.] § 2680(h)'s preservation of the United States' sovereign immunity for intentional torts by adding a proviso covering claims that arise out of the wrongful conduct of law enforcement officers." *Millbrook v. United States*, 569 U.S. 50, 52 (2013). "Known as the 'law enforcement proviso,' this provision extends the waiver of sovereign immunity to claims for six intentional torts, including assault and battery, that are based on the 'acts or omissions of investigative or law enforcement officers.'" (*Id.* at 52–53 (citing 28 U.S.C. §§ 2680(h))). The provision applies when such officers are "acting within the scope of [their] office or employment." (*Id.* at 55 (citing 28 U.S.C. § 1346(b)(1))).

In *Millbrook*, the U.S. Supreme Court held that the waiver of the Government's sovereign immunity "effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest." *Millbrook*, 569 U.S. at 57. "By its terms, this provision focuses on the *status* of persons whose conduct may be actionable, not the types of activities that may give rise to a tort claim against the United States." *Id.* at 56.

The Government provided a Declaration from Shayne Banks, Acting District Manager for the BLM's Southeastern States District Office. (Doc. 10-2). At the time of the facts alleged in the Complaint, Banks oversaw the BLM's "Wild Horse and Burro Program (WHBP) for the Eastern States." (Doc. 10-2 at ¶¶ 3–4). Banks also

supervised Sanders, who held the job title of "Supervisory WHBP Specialist." (*Id.* at ¶ 6). Banks attests that Sanders manages and oversees "District-level WHBP staff and provides the advice necessary to carry out an effective WHBP at the District Office level." (*Id.* at ¶ 7).

Banks' Declaration also provides that authorized officers focus on "verify[ing] compliance" with the Private Maintenance and Care Agreements that qualified adopters enter into with the BLM. (*Id.* at ¶¶ 8, 10–11). Authorized officers "may verify compliance" by conducting "visits to an adopter, physical inspections of the animals, and inspections of the facilities and conditions in which the animals are being maintained." (*Id.* at ¶ 11 (citing 43 C.F.R. § 4760.1)). "In general, . . . authorized officers schedule physical inspections in advance," but authorized officers can also conduct inspections virtually via a pre-scheduled meeting over the computer or a telephone. (*Id.* at ¶ 14). Because the United States retains title to adopted horses and burros until one year after the adoption, authorized officers have the authority to require an adopter to take corrective actions to ensure compliance with Private Maintenance and Care Agreements. (*Id.* at ¶¶ 10, 16). Authorized officers "should" also "repossess an adopted animal immediately if the animal is in imminent danger" and they can safely repossess the animal without needing to call law enforcement (*Id.* at ¶¶ 16, 17 (internal citation omitted)).

Banks attests that a "Supervisory WHBP Specialist does not conduct investigations into allegations of criminal animal abuse," which are carried out by

the BLM or local law enforcement. (*Id.* at ¶ 20). The Declaration further provides the following:

(1) A "Supervisory WHBP Specialist is not a BLM law enforcement officer";

(2) "Supervisory WHBP Specialists do not have authority to execute searches, to seize evidence, or to make arrests for violations of federal law"; and

(3) "Supervisory WHBP Specialists do not have authority to make arrests under 43 C.F.R. § 4770.4 or under 16 U.S.C. § 1338(b)." (*Id.* at ¶¶ 21–22).

Plaintiff, as the Government points out, does not challenge Banks' Declaration. (Doc. 22 at 1). Instead, Plaintiff argues that the Act "expressly empowers certain BLM employees to exercise law-enforcement powers" and the BLM's "own regulations explicitly vest certain employees with federal arrest and warrant-execution powers." (Doc. 13 at 5). Plaintiff also seeks to analogize Sanders to Transportation Security Officers (TSOs) at the Transportation Security Administration (TSA), arguing that various federal courts have found TSOs to be law enforcement officers. (*See id.* at 6).

Here, based on the U.S. Supreme Court's holding in *Millbrook* and Banks' Declaration, it is clear that Sanders is not a law enforcement officer. Unlike TSOs at airports around the country, Sanders' status as a Supervisory WHBP Specialist does not provide him with the authority to perform searches or make arrests. (Doc. 10-2 at ¶¶ 21–22; *see also* Doc. 13 at 6). Instead, Supervisory WHBP Specialists focus on ensuring that adopters of wild horses and burros comply with Private Maintenance and Care Agreements through pre-scheduled visits. Supervisory WHBP Specialists are empowered to repossess animals, but only when doing so does not pose safety

concerns absent assistance from law enforcement. Thus, Plaintiff's argument that Defendant Sanders is a law enforcement officer, which would allow Plaintiff to recover for claims arising out of Sanders' wrongful conduct if accepted, fails.

**d) Conclusion: The Court Does Not Have Subject Matter Jurisdiction Over Plaintiff's FTCA Claims.**

For these reasons, Plaintiff's FTCA claims are barred by the intentional tort exception to the Government's waiver of sovereign immunity under the FTCA. Accordingly, the Court does not have subject matter jurisdiction over Plaintiff's FTCA claims.[10]

**B. Plaintiff's State Law Claims.**

Where the Court has original jurisdiction, it may generally exercise "supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same cause or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court may decline to exercise supplemental jurisdiction, however, under Section 1367(c), which provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

---

[10] Because the Court has found that it lacks jurisdiction over Plaintiff's FTCA claims, the Court need not consider the Government's alternative arguments presented in the Motion.

28 U.S.C. § 1367(c).

Given that all of Plaintiff's federal claims are subject to dismissal, the Court may properly exercise its discretion in declining supplemental jurisdiction over all remaining state law claims. *See Kelly v. 18th Jud. Dist. Ct.*, No. CV 24-970-SDD-RLB, 2025 WL 1831361, at *4 (M.D. La. June 10, 2025), *report and recommendation adopted*, No. CIVIL ACTION 24-970-SDD-RLB, 2025 WL 1828630 (M.D. La. July 2, 2025), *motion for relief from judgment denied*, No. CV 24-970-SDD-RLB, 2026 WL 706251 (M.D. La. Mar. 12, 2026). Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses these claims without prejudice.

## V. CONCLUSION

**IT IS ORDERED** that the United States' **Motion To Dismiss Pursuant To Rule 12(b)(1) Of The Federal Rules of Civil Procedure. (Doc. 10)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's FTCA claims will be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.[11]

**IT IS FURTHER ORDERED** that the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims.

**IT IS FURTHER ORDERED** that the above-captioned action be and is

---

[11] *See Campos v. United States*, 888 F.3d 724, 738 (5th Cir. 2018) (emphasizing that FTCA claims that federal courts are dismissing for lack of subject matter jurisdiction must be dismissed without prejudice).

hereby **DISMISSED WITHOUT PREJUDICE**.

Judgement shall be entered separately.

Baton Rouge, Louisiana, this 30th day of September, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**